22-11 Phase 4 Head-Out Fahmi Ahmed Moharam, Petitioner, v. Transportation Security Administration and Negi Sivakovsky, Industrial Capacity Administrator of the Transportation Security Administration Mr. Siegel, Perturbationer. Mr. Wolfman, Perturbationer. Good morning, Council. Mr. Siegel, please proceed when you're ready. Thank you, Your Honor. May it please the Court, James Siegel on behalf of Petitioner Fahmi Moharam, I deserve three minutes of my time for rebuttal. This Court should not permit the government to evade any meaningful scrutiny of its deprivation of Mr. Moharam's significant liberty interests. In the administrative proceedings below, the government maintained that it could refuse to disclose any of the information on which it relied in placing Mr. Moharam on the no-fly list. Now before this Court, the government insists that simply by removing Mr. Moharam from that list, but providing no guarantee whatsoever, they won't be returned to the list and subjected to the same unconstitutional conduct. The government can remove this case by depriving this Court of any power to afford him a remedy. The government is wrong on both counts. The government didn't say that. The government said that they would not put him back on the list based on the information that they have presently, right? That's right, Your Honor. That's exactly what the declaration in the Pieper case said. The U.S. Supreme Court just decided, or it said that did not move a similar challenge to the placement on the no-fly list. Well, it's not a similar challenge. That's a 19 constitutional case, and this is an APA case. You're right, Your Honor. You're not seeking declaratory relief, right? No, Your Honor. We're seeking the remedies available under 49 U.S.C. 46110C. And so that is the only distinction with the Pieper case, and that distinction, I think the government does not dispute, goes only to this Court's remedial authority and not to whether or not Mr. Muharrem suffers any prospective injury here that could still preserve this Court's jurisdiction. So the government doesn't deny that under Pieper there is at least some likelihood that Mr. Muharrem will be returned to the no-fly list. It doesn't deny that it can't meet its formidable burden of showing that it's moved because he has no continuing interest in that sense. The government's sole distinction with Pieper is sort of a hyper-technical one based on this Court's remedial authority. It's that this Court can't set aside the TSA administrator's decision. And the basis for saying that this Court can't set aside the TSA administrator's decision is entirely based on the DHS TRIP letter sent to Mr. Muharrem, which informed him that he had been removed from the no-fly list. And in that letter, DHS TRIP said that this letter supersedes the TSA administrator's decision that Mr. Muharrem is a challenge here from which this petition for review arises. But in that TSA administrator's decision, the TSA administrator reached a number of different conclusions that are a challenge here. One, of course, was that Mr. Muharrem should be properly maintained on the no-fly list. Two, was that the evidence was sufficient to support that placement. That's something that could continue to have an effect on Mr. Muharrem going forward. And then three, that the government could, in fact, decide that without providing either Mr. Muharrem or his security clerk counsel access to any of the evidence on which the government relies. And so nothing in the DHS TRIP letter could possibly supersede those other determinations, which, again, the DHS TRIP letter simply told Mr. Muharrem that he had been removed. If we disagree with you on that, whether it supersedes it, what's your best argument that this case is not moved? I think two arguments, Your Honor. First would be that the TSA v. Wall decision, which this Court recently decided, that involved TSA orders that expired. This Court did not hesitate in saying that it nevertheless maintained jurisdiction beside that case because there was a possibility of continued harm going forward. Government says that that turned instead on the fact that the petitioners there had sought permanent injunctive relief. But that could not have been the basis for this Court's decision because 46110C does not provide for permanent injunctive relief. The actual remedial authority that the Court had in that case had to be the same as this Court has in this case. And even setting that aside, the capable of repetition yet obeying review exception to mootness would apply. But on the injunctive part of it, I think if the complaint, in fact, asked for injunctive relief, we wouldn't, at the jurisdictional stage, decide that the cause of action doesn't encompass injunctive relief. We'd give the plaintiff the benefit of the doubt on the scope of the cause of action, no? No, Your Honor, because I think that 46110C is a jurisdictional statute, speaking in terms of this Court's jurisdiction. And so if this Court does not have the jurisdiction to issue an injunction, then that would likewise preclude this Court from holding the cases in moot and actually reaching the merits based on something it doesn't have the jurisdiction to do. And to the extent that the mere mention of some sort of relief like that in the petition for review would suffice, we, similarly here, ask for this Court to hold unlawful the TSA administrator's decision. That, again, would really be a basis for distinguishing the TSA view all decision. Go ahead. What do you mean? Because you're asking for a set-aside of the TSA administrator's decision. Yes, Your Honor. And then the decision, its operative force is to maintain the no-fly list, maintain the existence of a person on the no-fly list. So if the person is then just not on the no-fly list anymore, then hasn't the force of that decision already been undone because what the decision did was to maintain them on the no-fly list. They're not on the no-fly list, and therefore they're not obviously being maintained on the no-fly list because they're not on it anymore. Well, it didn't simply maintain them on the no-fly list. It said that he wasn't entitled to any of the evidence he sought in challenging his place on the no-fly list. So it has that sort of operative effect as well. But then again, so TSA v. Wall is exactly the same. But the evidence only comes up because of the challenge to maintaining them on the no-fly list. Yes, Your Honor. So again, so TSA v. Wall, just to turn to that, the orders had expired. These were masking directives that applied to transportation areas, and they had expired. This Court nevertheless said it had the power to address those. The expiration of those orders didn't deprive this Court of the remedial authority to determine whether or not those orders had, in fact, been proper. Where what was being sought was injunctive. This Court did not mention the fact that the petition referenced injunctive relief. Again, this Court doesn't have jurisdiction under 46110C to issue an injunction, so I don't believe that could have been the basis for this Court's holding. And then again, as I mentioned, our petition for review asked for this Court to hold unlawful the TSA order. So since there's a basis for asking for relief that's not actually set forth in 46110C, we've effectively asked for a declaratory judgment, which I think the government concedes would likewise prevent this case from becoming moot. Even putting that aside, there's also the cable of repetition evading review exception. So put that aside for one second. So in FICRE, do you disagree with the proposition that what the parties agreed to was moot there was moot? No, we don't, Your Honor. So if we had sought an injunction removing him from the no-file list, we agree that that would be moot.  Yes, Your Honor. So it's the fact that you're not just seeking the equivalent of an injunction that removes him from the no-file list. It's more that we're seeking the equivalent of a declaratory judgment, and that declaratory judgment would have effect if and when he is placed again on the no-file list. So, for example, this Court holds that in the TSA administrative proceedings that were challenging here, and in fact did violate Mr. Maharam's procedural right to due process, to not allow even a declared counsel access to the classified information on which the government was relying, that would have a preclusive effect in the future TSA administrative decisions if and when Mr. Maharam, again, challenges his place on the no-file list. So in that respect, it's exactly like the sort of declaratory judgment that Mr. FICRE sought. So if your petition just asks this Court to hold the decision unlawful and set aside a revenge, it holds the decision maintaining him on the no-file list unlawful? Yes, Your Honor. And then? We ask for it to be held unlawful. Right. If, imagine this Court were to address that question, we were to decide, even without looking at the classified, and I know we have arguments against this, this is just a hypothesis. If this Court were to say, well, we've looked at even the unclassified record, the public stuff that's been released, and we've looked at the other stuff, but just on the face of itself, the public information itself, you have successfully argued that he should not be on the no-file list. And nothing in the classified documents changes that. And so you have shown us that it's arbitrary, Capricia. And so we were to order them to take him off the no-file list. Right? I'm hypothesizing in a world where they have not yet said he should take it off. Okay. It was pre-their letter. Yes. Their May letter. If you had won on your argument, and won without needing access to classified information, would that have been full relief on the petition that you filed with us? Yes, because it not only would have removed him from the no-file list, but it would have made clear that he could not be placed on the no-file list again for the same sort of conduct. But we wouldn't have any obligation then to proceed and address your due process arguments about access to classified information in that situation, correct? No, Your Honor. That's in part because there wouldn't be the same risk that he'd be placed again on the no-file list. So the constitutional issue that arises due to his being deprived of all this evidence continues to be lagged because he might be again placed on the no-file list. Okay. So the point is we can recognize that you can obtain removal from the no-file list that is satisfactory, and this happens often in cases, without us having to address every procedural objection raised in the case. That happens all the time. In theory, Your Honor, but I think just like in FICRA, the key is that he could again be placed on the no-file list and be subjected to the same unconstitutional conduct. We can talk about FICRA in a second, but just so if we imagine a hypothetical case, we would agree that he wouldn't have to go ahead and address his due processing. No, Your Honor. And then if the government were to again put him on the no-file list, but they would have a new declaration, say a classified one or a public one, saying, and here's something else that he did recently that we're relying on, that had not been in the prior case, that would be okay. And if there were entirely different evidence? A new piece of evidence, yes. Entirely different theory of why he should be on the no-file list? Not entirely different theory, additional evidentiary record. Yes, Your Honor, but I think the same is true in a case like FICRA as well. Again, there's a lot of differences between the relief sought in FICRA and the claims asserted in FICRA than what's asserted here. But why then isn't the government's statement that this current record, which is the record you're challenging and the record you're seeking to see, the public record and the classified information, this current record is concluded is not a basis for him to be on the no-file list. Why doesn't that mean that he couldn't be put back on unless there was a new piece of information that was different in a material way? We're not going to say he tied his shoes. There's some material piece of new information that would change their calculus. If that's how we understood their representation, why would that not be the same as the hypothetical I gave you? The issue is that he could do the exact same thing he did before and be returned to the no-file list. And that's exactly what was the issue. That's what they say is that the current information, which is the same things he's done before, will not support him. No, Your Honor, and that's, again, that's the distinction the Court drew in FICRA. They said the declaration was exactly the same. They said he will not be returned to the no-file list based on currently available information. Okay, if you want to talk about FICRA, we'll talk about that. But then they said, and why did it matter in that case? The first thing they said is, well, he has argued, which isn't argued here, and he has sought declaratory judgment, injunction going forward, even once he's off the list to stop the government from monitoring his attendance at mosques, threatening him to either turn over people or you'll be on a no-file list. Those were the allegations in his complaint in that case. He had all manner of claims. He had religious discrimination claims. He had racial or national origin discrimination claims in that case. And he wanted forward-looking relief that would not only take him off the no-file list but also prevent the government from, you know, once again, again, these are allegations, I'm not saying what happened or not, but in his view of following him, monitoring his religious activities, and putting him in coercive situations. I think he wanted an injunction against being sent off to another country for interrogation. None of that, all of that stuff, none of that was remotely addressed by taking him off the no-file list. There were all these other things that could still be decided and redressed by a court. Maybe he'd win or lose, but they were all live issues still to be resolved. You don't have anything in this case. You just agreed that if we were to hold that based on this record, hypothetically he shouldn't be on the no-file list, that would be full relief and we wouldn't have to address your procedural arguments about access to classified material. And the same thing, the government would be in the same position it is from a statement here. You haven't sought any other relief, no other form of relief, and there's nothing, they would have to have something new if they were to try to put him back on again. Sure, I think there's a key to really distinguish the possible future injury from this court's remedial authority. I think FECR is directly on point with respect to the possibility of future injury. And so there, again, what the government says- But the possibility of future injury were completely different allegations than what we have here. You're talking about if he's back on the no-file list, they might have the same procedural arguments. He thought the future injury for him was they're videoing me every time I go to the mosque or they are coming to my house and knocking on my door and saying, I really need you to tell me about somebody else, what they're doing, otherwise we're going to keep following you, or harassment, or whatever he wanted to characterize it as. Or I'm at risk, if I travel abroad, some other country is going to grab me up and interrogate me. Yeah, I mean, respectfully, we don't know why he's on the no-file list, so we haven't been able to make the specific substantive arguments. But your client didn't have the actions happen to him that happened to FICRA. And he hasn't claimed relief from the activities that happened to him that happened to Mr. FICRA. The only commonality is on or off the no-file list. If someone's off the no-file list, we don't have to address whether they were procedurally put on in the first place. They're off. Well, Your Honor, so for example, one of the reasons that he could be on the no-file list, when he was attempting to guess at the reasons in the administrative proceedings, was because he attended a particular religious school in Yemen. And if, in fact, that is the basis for the government's determination that he's probably on the no-file list, then he would likely bring the same sort of religious belief. He could bring those, and those could be litigated. But those aren't brought in this petition. My only point is this petition does not assert any claims like that. Well, Your Honor, we've asserted the government's decision to keep him on the no-file list was arbitrary and capricious. And we've asked this Court to not allow the government to file the entire record ex parte, because that prevents Mr. Moharam and his counsel from actually advancing any substantive arguments with respect to that. If we were to address the merits and rule for you in this case on just whether there was enough information here to warrant putting him on the no-file list, and you won, what relief would he get? He would be prevented from being put on the no-file list if he, again, did the same thing that he did here. Right. And if the government gets up and says, now this may be, maybe we're trying to figure out how to read the government's representation.  If the government gets up and says, we, our statement means we cannot put him back on the no-file list based on this same information, something else would have to happen. Presumably nothing will happen. It won't happen. But something else would have to happen that's materially different. Then there's no relief whatsoever we can provide to you. So, respectfully, Your Honor, I think I rejected exactly that proposition. The government can't stand up and make that particular representation, because the speaker looked at the same declaration and said that that declaration does not provide any assurance that if he does the same thing again, he won't be placed back on the no-file list. Because to appreciate why it's not enough, consider one aspect of his complaint. This is why just taking him off the no-file list was not enough in that case. He contends the government placed him on the list for constitutionally impermissible reasons, including his religious briefs, and then the whole paragraph is about threatening to keep him on the list unless he turned on people, monitoring his activities, sending him to foreign countries. Those could all be, real relief could happen if he got an injunction against monitoring his religious activities. If he got an injunction against threatening him to get him to turn on other congregants or other people. If he got an injunction against having him interrogated by other governments. The Supreme Court told us exactly what it was that kept his case alive, none of which your client has asserted in his petition for review. Your Honor, I think the direct parallel here would be if, for example, he's on the no-file list because he attended that particular religious school, and he's off the no-file list now, but if he goes back to that same school and is placed back on the no-file list for that exact reason. That's the question then about the government's concession in this case. Whether they think, yes, if we just hypothesize the reason he's on the list is he went to the school, which I think your client names publicly in his declaration. It's the school in Dimaj, yes. Right, so it's the school in Dimaj. I'm assuming for these purposes there's only one school in Dimaj, and there wouldn't be a second school in Dimaj he could go to that would upset the government. So he goes to the school in Dimaj, okay? And if we are just assuming that that's the reason he's on the no-file list. And if the government comes up and says, when we say this current record does not support maintaining him on the no-file list, we've essentially taken out that decision by the administrator, torn it in, subbed in this new piece of paper that says this is not enough. If they say, so just going to Dimaj, if nothing else changes materially, will not be enough in the future either. And any other public, you know, going to visit his family in Yemen for a couple months, the things that are public record, that won't be enough, all by themselves. Then there's nothing more to give your client. Now, of course the government can't say we'll never put him on the no-life file list again. Not your client, but if they said that for some other person in another case, that person then would have license to do anything they want and never get on the no-file list. So they have to always have room to say, if there's material new evidence, all bets are off. You would agree with that? Yes, Your Honor, and we're not contending that it has to say we'll never put you on the no-file list again. What we're saying, what the Supreme Court in FICRA said, is that the government has to meet its formidable burden of showing that what happened here won't happen again. Right, and couldn't do it there because of all the other problems that still needed to be addressed and could be redressed. It's not just that, Your Honor. It's the particular wording of the declaration. Okay. But I do think the government, I'd be interested to see what the government says because I don't think they can make that representation. Can I just try to clarify one thing? So there's one distinction in that if there's a claim in a case like there was in FICRA, that this is a piece of information that you just can't take into account, period. And let's say it's something that's happened twice. You go to a school and you've gone twice, and what the government thinks is, we used to think that going twice was enough, but now we think actually you have to go three times. And so gone to the school two times, and then the government says, well, based on the currently available information, we used to think that was enough, but actually we no longer think that's enough. So the currently available information is that you went twice. That's now we've come to reconceptualize what is enough. Two times is not enough. Based on the currently available information, you're no longer on the no-fly list. Then there could still be a gap because it could be that the claim would be, you can never take that fact into account no matter how many times it is. And the government would say, well, we're not saying that. We're just saying that all we knew before was that you've gone two times. We think you need three. And so then the person goes back a third time, and then the complaint would still have a problem because going at all would be a problem. But from the government's perspective, it still wouldn't be on the currently available information because there'd be new information in that you would have gone and done the same thing another time, and that would be enough. Do you see what I'm saying? Yes, sir, but I think that favors our position, Your Honor, because if this court were to set aside that determination. So what I'm wondering is, in FCRA, the claim was made that, and part of it, it wasn't a 46-110 case, right? No, Your Honor. And so the claim was made that you just can't take into account visiting, just to make the comparison, you just can't take into account visiting the school at all, period. You can't do it. And so that was part of the theory of the complaint, and that was part of the relief that was sought was the declaration, but that can never be taken into account, period. It just can't. It's not a cumulative. It's not two versus three. It's ever.  And then there isn't that kind of claim here, as far as I know. I think the procedural due process claim could be characterized in that way, but to the extent you're saying that there's no – But the procedural one, I think, the judgmental type is a good – I was struggling to come up with a hypothetical that actually would tease that out, and that one does, because the procedural part of it drops out if you get the relief on the ground that – I don't think that's necessarily true, Your Honor, because, again, so even say that the subject – it's exactly like FICA, right? He goes back to the same school. Part of the constitutional problem here is it's not just that he's gone back to the same school, and that might be constitutionally impermissible religious discrimination or something like that. It's that when he, again, attempts to challenge that determination, he won't even know why he's on the list. And so the same exact constitutional deprivation will happen again, and this court could prevent that constitutional deprivation from happening again by setting aside the TSA administrator's decision. So in that respect, I don't really see any relevant difference with FICA. But even setting that aside, so even setting aside the procedural due process claim, the reason there's no comparable religious discrimination or other sort of claim here is because the government hasn't provided any information. That's sort of the central issue. And so, you know – Right, and if you got that kind of – I mean, in FICA there happened to be that kind of information available so the claim could be brought. Yes, exactly, Your Honor. But so that information could be made available here. We've opposed the government's motion to file the entire administrative record, the meaningful portions of the administrative record ex parte. But I don't think it's the case that in a 46-110 proceeding that you're entitled to get a resolution that gives you enough information with which you can make sure that that kind of thing doesn't happen if you are getting the relief anyway. Well, Your Honor, I think it's more a question of whether there's a continuing live controversy, whether the government is established. The government is burdened to establish that the case is moved. The government doesn't dispute that this case was jurisdictionally proper when it was first brought. The government has to show that it, in fact, removed any relevant controversy that this court has the authority to address. And so as I take the government's brief, it's not making the sort of argument that Judge Millett is suggesting, that it's removed any possibility of future injury that could be present here. Again, and I think that's because the government recognizes that FICA is controlling that issue. What the government is arguing is simply that there's no power in this court under 46-110C to set aside a TSA administrative decision that's been superseded. That's essentially their sole argument. They don't deny that the procedural due process issue could arise again. They don't deny that Mr. Moharam could be placed on the no-file list again for essentially the same reasons. They don't deny that to the extent he has any sort of substantive challenge to his current placement on the no-file list, which, again, he can't know because he doesn't have the evidence. They don't deny that that exact claim could arise again. They're saying only that this court can't set aside a decision that has been superseded by a letter sent by a different branch of an agency that simply informs Mr. Moharam that he's no longer on the no-file list. Okay, well, we'll definitely hear from the government on that. Can I just follow up on Chief Judge Hrabowski's question about, well, if they have information reasonably, if the three times meant you qualified as a certain relationship to someone that they suspected, but two-time visits didn't. If we were to rule for you in this case and say this record's not sufficient, that would only – and we're just hypothesizing. Imagine the record says – originally they said two times he went to this place or talked to this person, and so we're going to put him on the no-file list for that reason, and then they come along in May and go, no, no, no, no. Two isn't enough. It has to be three. If we review this decision and rule for you, all we would hold is two's not enough. Well, Your Honor – It would have helped you, but I don't see how. It would not address, and we couldn't decide. We don't get to do free-form, forward-looking declaratory judgments, or you haven't asked for one. Certainly in your petition, I think it's – whether we can do that under 46.110 is a question, but you haven't asked for it. And so all we would do is say, under this hypothesized record, two's not enough. Well, Your Honor, I think that's just true. That would help you if there were a third, if that were the rationale. I think it would, Your Honor. And again, so the preclusive effect of a judgment – You have no legal judgment saying that whatever their rationale – to be clear, this is all made up, but if we have no rationale whatsoever, presumably they would have an explanation for why three is material. Well, Your Honor, so say, for example – That would not have been covered by a prior decision. I don't understand how it helps you at all. If this Court set aside the TSA administrator's decision because, you know, tending this particular religious school twice was unconstitutional religious discrimination, for example, that would have preclusive effects in a future proceeding. That's a substantive constitutional argument. You've only argued that it's arbitrary and capricious, that it wasn't sufficient evidence. Well, again, Your Honor, that's because we haven't seen the evidence. We don't even know what the basis is. So you're in a different position, to be sure, from Mr. Fickra, but you're in a different position from Mr. Fickra in his case. Yes, Your Honor. I guess I'd ask that to the extent this Court thinks that the mootness inquiry turns on the actual substantive arguments we can make, that this Court first resolve the pending motions to determine whether the administrative record should, in fact, be filed after our test. I mean, I think it would help. I guess, well, I think the two versus three would help if there were a claim that it can never be taken into account. As was the claim in Fickra. Yes, Your Honor. I mean, we've argued it's arbitrary and capricious and contrary to law, and I think it would just depend if the Court's rationale for why two was not enough would inform whether or not three might not be enough as well. And, again, this is the sort of— You haven't been able to make, or even the standards of Rule 11 possibly allege, that what the government did here substantively is unconstitutional. No, Your Honor. We haven't been able to make any claims about what the government substantively did. That's right, Your Honor. But it could be, because we've done the best we can to preserve that claim. We've asked this Court to unseal the relevant information so we can see it. Can I just have a practical question about how the no-fly list works, and I don't know if you can answer. Obviously, you can't get on airplanes that are within, leaving from, or going over U.S. airspace. Just because there's arguments about what the nature of the liberty interest is here, are people able to travel to another country, bus, car, and fly from there? As a practical matter, no, Your Honor. This is addressing the Lateef decision and sort of affirming Cash M, the Ninth Circuit's decision. And part of the issue is, for example, if he were to try to go to Canada and fly from Canada. Well, I'm assuming maybe Canada and the U.S. share information like this, but say he went to somewhere in Central America. The issue is... He's going from there to another country, and then to Yemen. Is Your Honor identified that, first, there's the issue of sharing information, and, in fact, the no-fly list is widely shared, but then, second, that there's... Widely shared with who? With a number of other countries. A number, but I'm just trying to figure out, it's harder. There's no doubt that it's harder. But there are countries drivable from the United States that probably we aren't sharing a lot of information with, and they have international airports, too. They might not go all the way to Yemen, but they might go to another country that does go to Yemen. So did he ever investigate whether he could travel to Yemen? It would be harder, maybe a little more expensive. I don't believe it's in the record whether he investigated that. He said he was unable to fly and visit his family in Yemen. He was from the United States. He said he was unable to do that. He hadn't traveled since he had been placed on the no-fly list. But what about when he made an effort to try from another country? And I just didn't know if that's somehow rendered internationally impossible in every country, which would be surprising to me, or it's simply definitely more complicated. It's so significantly more complicated, I think it is effectively impossible, and that's what the court in Latif held in the Ninth Circuit affirmed. And I think part of the issue is not just whether there's information sharing, it's traveling over U.S. airspace. It doesn't seem to say it's effectively impossible. I think I've read Kashim as saying it's a pain in defining the liberty interest. The Latif case that Kashim affirmed sort of more directly goes into this and explains why there's such a substantial infringement on the liberty interest. But I didn't see a logistical explanation of how the no-fly list works, and that is could one have gone to another country with which we're less friendly or isn't so willing to trust our information and fly from there? Again, I think those— Is that a yes or a no? It might be conceivably possible if you were to travel somewhere far enough that any flight wouldn't take him over U.S. airspace. Sure. But I don't know practically whether that is, in fact, possible. And certainly the government hasn't argued in this case that if he is— We haven't talked about it at all. I'm trying to understand that. I understand you've got the Ninth Circuit decision, but I'm trying to understand the nature of the liberty interest here. He's not completely precluded from seeing his family. He is so— Take a boat. I think—Yes, Your Honor, I think conceivably he— I'm not sure he would have been able to take a boat because, again, that information was shared with those sort of authorities as well. But then again, I think if there were any practical way for him to see his ailing mother, his wife, and his children in Yemen, he would have done so, and he did not, and that was because he was on the no-fly list. That's not in the record that he tried every conceivable route. He said that he was unable to visit his family. Okay. There was no elaboration. Right. Okay. Thank you, Your Honor. Thank you, counsel. We'll give you some time for rebuttal. Mr. Waldman. Good morning, Your Honors. Joshua Waldman from the Department of Justice, representing the respondent, TFA, in this case. Petitioner's no-fly list claims are moved because his asserted injury is no longer redressable by the only relief that he seeks, setting aside TFA's final decision maintaining him on the no-fly list. The government has removed him from the list. TFA's final decision is superseded, and TFC has provided a declaration saying he no longer satisfies the criteria for placement on the no-fly list. Petitioner has waived any request for declaratory or injunctive relief of any kind, including the kinds sought in FCRA or anything else, and as a consequence, there's nothing this court could do that would redress the injuries alleged in this case or create a judgment that would be binding going forward on TFC. What does superseded mean in this case? It means that the prior decision maintaining him on the no-fly list no longer has operative legal consequences or effect, meaning if he went on a plane now, he would not be barred by the no-fly list. Is that decision torn up and gone? I mean, the judgment that the evidence at that time was sufficient is negated, overridden, disavowed by DHS? No, it does not mean that. It's not a judgment that at the time that he was put on the no-fly list that that judgment was correct or not. It does not mean, for example... How can that be? You said that on current information that it's not... You're saying that it's a dates thing, that by the time May rolled around, what was good enough then was not good enough in May? Yeah, well, remember, the allegation here is that he was put on the no-fly list in 2017, so we're now seven years on, and the no-fly list, the order maintaining him on the no-fly list, was several years ago as well. So the government continues to, as it does in... I'm not speaking specifically about this case, but in general, people continue to have investigations, as we say in the record, the government audits citizens who are on the no-fly list biannually. TSA, TSC does it periodically anyway, right? Yeah, yeah. So it could be that it's not superseded in the sense that everything the TSA administrator said is still being backed up by the government. No, there's nothing that happened that in any way disavows the reasoning that went into the TSA administrator's decision at that time. That's correct. So it could be that TSC has come into possession of new information that the TSA administrator didn't have, and based on this new information, the government has withdrawn an individual from the no-fly list. That could be... Practically, yes. And then to say in that situation that... And then you would still go on and say, and therefore the TSA administrator's decision is superseded. Even though it's entirely based on completely new information that wasn't before the TSA administrator and the TSA administrator's rationale isn't disavowed at all, you could still say it's been superseded in the sense that the TSA administrator decided that the person should be maintained on the no-fly list, but now based on new information, the person's no longer on the no-fly list. Right. So I think that all comes back to the original statement, which is the TSA's final decision, which has had at the time legal consequences for the petitioner in terms of whether he could board a plane or not, no longer has operative legal effect. So I guess all I'm saying is, and I'm not saying this necessarily has legal consequence, but in describing the TSA administrator's decision under review as superseded, there's actually nothing that's superseded about it other than that the TSA administrator preserved somebody on the no-fly list and they're no longer on the no-fly list. So all that's being superseded is whether they're actually on the no-fly list any longer. Apart from that, everything about the TSA administrator's decision is totally still in place. I would agree with that, yes. The only thing that it changes is his current legal consequences and not a prior judgment about what the evidence was sufficient to do years ago. Just current legal consequences? I had read your letter as a judgment as well, that at least as of May 2024, the information that upheld the decision in June 2022, as of May 2024, that information is not sufficient to put him on the no-fly list. Right. It's a timing issue. So the removal of him from the no-fly list is not a judgment at all. So it's more than just you're off the no-fly list. It is that this pile of information that existed in June 2022 is not, as of May 2024, sufficient to sustain you on the no-fly list. Yes, based on everything we know. It's informational as well as consequential. You can answer the question saying it's just a consequence. He's not on the list. But there's an informational judgment as well. Yes, that's a judgment. But how could there not be? I mean, of course there's an informational judgment. But I think what I just meant to say is TSA, there's a difference here because there's TSA and TSC. And I was only trying to make a statement that TSC has analyzed the evidence and made that judgment. TSA's statement is only about the legal operative effect of its prior decision. And TSC can overrule a TSA administrator? I mean, it's not overruling in the sense of a judgment about whether TSA was wrong at the time that TSA issued its judgment. TSC can't do that. Well, they must have the authority to supersede. They must have the authority to displace. Well, TSA said it superseded its own decision. So there's a division of authority here, and that's important to understand. The TSA administrator is not the person who, after making a final decision, then continues to look at the record and does the biannual audits and things of that nature. That's what TSC does. So when TSC has a new record before it and is doing one of its periodic audits, it may know something that TSA did not know at the time that it made it. This might be just a technical point, but maybe not. You just said that not only did TSC conclude that he's not on the no-fly list any longer, but the TSA administrator superseded the TSA administrator's. The TSA administrator decided that the TSA administrator's prior decision is superseded? I think the way I read the letter is that TSA is saying, we had an order that, until today, was in operative legal effect and had consequences for you, and we're superseding that. We being TSA? Yes. TSA administrator is the one who made the final decision to maintain him on the no-fly list at the culmination of the redress process. The June 2022 decision? Yes. And since that was TSA's final decision and that had legal consequences, it's TSA's role to supersede its own decision. But it's not making a judgment about whether the record was sufficient in the past, and it's not making the judgment that TSC is making at that point about what the current record is sufficient. But it is making a judgment, because I guess I didn't see anything concrete in the document that indicated that the TSA administrator was saying that the TSA administrator's previous decision is superseded. But if that's the way that you're representing, we ought to understand that. Well, in the letter that TSA sends to the petitioner saying you've been removed from the no-fly list, it also says this letter supersedes the prior final order. I can't get a complete track of who sent what, but that was the letter sent by the TSA? Yes. So there's two documents. It's signed by the DHS Travel Redress Inquiry Program. Yes, yes. And that's the one from May 2nd. It looks like this. It was attached to the motion. I think it was a suggestion of mootness, or I forget how we titled it. It's in that reaching agreement. Yes. And so it says you have been removed from the no-fly list and will not be put back on the no-fly list based on the currently available information. And then the next sentence says this letter supersedes the letter sent to you on June 9th, 2022. That's the final decision that was part of... I guess what I wasn't understanding is that does say this letter supersedes, but it's a letter not from the TSA administrator. It's a letter from DHS TRIP, and I think that that's the same entity that sends the final decision, notifying you of the TSA administrator's final decision. Oh, I see. They're the conveyance. Yes. Now, remember, TSA is housed within DHS. Wait, sorry. I'm confused. The June 22 letter is signed by the administrator. Right. Not by DHS TRIP. Right. DHS TRIP is the redress program administered by TSA. It's called DHS TRIP because TSA is housed within DHS, but this is something that's administered by TSA, the redress procedure. So the way you think we should understand, we can try to unpack the niceties of it, but the way you think we should understand the 2024 letter from DHS TRIP is that that's the TSA administrator manifesting that the TSA administrator's 2022 decision is superseded.  So the 2022... I have authority for that, that that is the DHS TRIP speaks for the TSA administrator. Well, the... Is it a flowchart? Is it a beer crack chart or something? I mean, I don't have a flowchart for you, but I do know that DHS TRIP runs the redress program, and it is the one that issues the final decision to the petitioner, and... It's not the one that issues the final decision to the petitioner in this case. The administrator did it. It's signed by him by name. Right. Whereas this letter is from an office, not from a person. Right. The 2024 letter is from an office, not a person. The 2022 letter is from a person whose title is TSA administrator. Right. But the program is under the umbrella of TSA, and that's in our brief, Your Honor. So, I mean, I think... Lots of things can be under umbrellas in our government, but they can come in different branches. Yeah, I mean, I just think that the... That's how you... Can I ask you, in 2022, the TSA administrator writes and signs this letter. Yes. How... Who gave that letter to their addressee? Was it just put in the mail, or did the TSA TRIP... I mean, I think it's literally sent in the mail, but in addition, I believe that you e-mail it to petitioner's counsel, his counsel of record. It's filed on a form with the redress program. And so that's... It's delivered both, I think, by paper mail and also by e-mail. I mean, I assume, from the way you understand it, there's no impediment to the government's getting the TSA administrator to say the thing that the DHS TRIP communication in 2024 said. I don't think that there's anything, any legal impediment. There's no real procedure for it. The redress procedures do very specifically call for the TSA administrator to make the final determination in the redress process, but it doesn't have a similar provision, as far as I know, for notifying someone who's removed from the no-fly list. Because what I... One thing I noticed was in your brief, the supplemental brief on mootness, there's many references to the TSA having informed Mr. Maharam XYZ. And there just technically is nothing where the TSA has done that, unless you just think that DHS TRIP doing it is TSA doing it. I mean, I do in the sense that DHS TRIP is a TSA-administered program. It just has the name DHS TRIP. So this is coming from TSA. But, again, once the TSA... Just so you understand, there's a division of authority here. When someone is a citizen and they're on the no-fly list and they seek redress, if they're going to be maintained on the no-fly list, the only person who's going to make that decision is the TSA administrator. But after that happens and there's periodic audit, then TSA can do the removal. And there's nothing, as far as I know, in the procedures that then requires a notification from DHS TRIP that comes from the administrator himself, as opposed to from the program. Oh, I think it's definitely true that once TSA decides that someone's not on the no-fly list, they're not on the no-fly list, regardless of what the TSA administrator may have once said. Right. But I guess what I think we're trying to piece together is what does it mean for the DHS TRIP correspondents to say that the TSA administrator's determination that's under review has been superseded? Oh, that it's under review in this case. Yeah, under judicial review. The way I understand it is what it effectively means is the TSA's final decision from 2022, the administrator's final decision, says you are properly on the no-fly list, and that was his determination. And as a result, he would not be able to fly on a U.S. carrier or on or over U.S. airspace. And now I understand the flutter. I mean, that no longer has operative legal effect. So if you try to board an airplane, TSA's not going to say, no, you can't board. And that's sort of effectively really the only thing that I think we're claiming is the effect of superseding, which is the same as being removed from the no-fly list. And I think our point in terms of this, just to bring it back to first principles, is if the only thing that you're seeking is to set aside that order because it prevents you from flying, but you're not on the list, and TSA is saying the thing that kept you off of the plane no longer has operative legal effect, then really there's nothing left for this court to do in terms of redress. Does the DHS trip on the bureaucratic flowcharts answer to the administrator or directly to the DHS secretary? To TSA, is my understanding. To TSA, which is the answer to the administrator of TSA. Yes. Well, of course, the TSA administrator answers to the secretary of TSA. Of course, right, but I'm just trying to figure it out. Okay, so is the administrator notified of a decision by DHS trip before they notify the person? I don't know the answer to that question. Could the administrator, if it were notified, that person were notified, could she or he override DHS trip? No, no. The only role that the TSA administrator has is when a citizen files a redress complaint and the person is going to be maintained on the no-fly list, that's TSA administrator's final decision. But any removal after that fact, based on whatever new information is available to the government, is done by TSA, and the administrator doesn't have a role of saying, no, no, no, I'm keeping them on. Why not? I mean, the buck stops with the administrator. Why couldn't the administrator, if they get wind of this, say, oh, no, no, no, I kept this person on the list for a reason, and I want to look at this. I mean, I think that we could have a program that worked that way. That's just not the way that the operation works. And I do understand that because there's a division of authority, there's a theoretical possibility that there's sort of tension or disagreement in the way that Your Honor suggests. I think as a practical matter, TSC and TSA work together collaboratively and in cooperation No, but I think the problem is if the position is as you said, then it means that TSA could on May 2nd, so on May 3rd, TSA administrator could have heard about this and said, that's nuts. Put them back to the TSA people who originally put them on the no-fly list. Put them back on today, and he'll challenge that, and the TSA administrator will make the exact same final decision based on the exact same information, and then TSA will go, no, we said no, and we don't have any way of knowing. So the TSA administrator isn't of the view that if the exact same file of information came to him, I'm sorry, I don't know if it's a her or him, but came to him. Oh, the administrator you're talking about? Yeah, I think it's a male name on the list. I don't know if that's still the person, David Bukoski, so we'll say him. If it comes to him, he'd go, I don't know what's wrong with those crazy people over in the TRIP department. This isn't us. And you could have this badminton game between these two offices. I mean, that could happen. No, I'm saying the opposite, Your Honor. So this office of TRIP can bind the administrator. No, it's TSC, not TRIP. That's the gap, because DHS TRIP, all DHS TRIP is doing is communicating TSC's decision. No, not really. In a world in which a citizen is on the no-fly list and files a redress complaint, TSC in that context makes a recommendation, but the TSA administrator makes the final determination. But outside that world, what happens afterwards, the person is where we are now. That's TSC.  So TSC decided that Mr. Maharm is not on the no-fly list any longer. Yes. And then that got communicated through DHS TRIP, I think. Right? Isn't that the document? The letter is from DHS TRIP that's in our file? Yes. That's what I'm saying. Yes, the reason why that happens is that TSC doesn't have a publicly facing thing, so it's got to be communicated some way. And the way that communication happens in the redress process is a petitioner, if he's represented by counsel, files a form that says, this is who my counsel is and all communication should go through them. And so that's all we have. Right, because in other words, TSC did something that has an effect on this whole proceeding. Yes. That effect has to be communicated to the people involved in this proceeding. TSC doesn't send a letter that says, oh, we know that you filed a TRIP request and then that resulted in a 46110 action, and so we're just going to let you know what the consequence of our decision is for that, because TSC doesn't have a role in that. Right. It's DHS TRIP that does that. Although I will just sort of add that TSC does write a declaration, which is also in the record. Sure. And that is communicated through it as well. Sure, that can be. And I played a role in this, too, where I emailed these documents to counsel so they would be aware of it and then we filed it officially in court. You're just a transmission agent. I guess at the end of the day, I guess now that I think I'm understanding the context to some extent, I'm sure there's some I don't understand, but because of your limited understanding of what superseding does, I'm not even sure it matters that the TSA administrator could. The TSA administrator can't undo what TSC did. It just can't happen. TSC took the person off the no-fly list. There's nothing that the TSA administrator can do that can undo that, as I understand it. Right. The only way a TSA administrator can undo what TSC does is if TSC makes a recommendation, keep them on the no-fly list, and we're in the redress process. Right, but we're not. Put that aside for now. No, they're off. Just put that aside for now because I get that that's hypothetical. Okay. But I'm just saying, based on the decision that was made by TSC that you think results in mootness, there's nothing that the TSA administrator can do at this point that undoes that decision. That's my understanding, yes. Right. It just can't happen. Yes. But can it practically undo it by the next day? No. Putting them back on the list because, say, you get the recommendation from February.  Most people are crazy. No. This is enough. No. Why not? The TSA administrator's only role in that is in reviewing a redress application, which only happens if the person's on the no-fly list in the first place, which is done by TSC.   As I understand it, here's what happened, right? So the agent's trip makes the recommendation. I mean, there's a lot of things happening, but information was collected. Was DHA's trip the one that initially communicated the initial decision, Mr. Maharam? From years ago? Yeah, yeah, yeah. 2017 or whatever.  Right. Okay. DHA's going to do that. It gets reviewed by the administrator. Boom. That's the final decision. That's what we review. Once that final decision is locked in, then TSC sort of does these audits and checks in and decides whether it's still worthwhile. That's not reviewable by the administrator. So TSC's gone along and goes, no, we've decided no. No good anymore. And so our decision now is no good anymore on this record. Not going to be on the record of current information. Not going to be on the list. But nothing about that decision stops DHS trip the very next day or the very next hour from going, what are you guys doing? We think this person should be on the list. We're going to do another initial decision today to put him back on the list based on what stops them from, I guess that they wouldn't overrule the center, but they could just go, fine, we're going to take that same file of information. We're going to make a different decision. Because that decision doesn't control the administrator's decision. Right. No, TSA doesn't, it doesn't operate that way. It doesn't do response, they do stuff. It's in response to a claim by somebody, right? Yeah. So it might help for you to understand, it might be helpful to understand to go back in time to before 2015, the way our procedures used to work, and then explain how that changed. That might give you some context. I'm happy to have you do that first.  I'm going to answer the question that precludes them the next day from saying, we disagree with the center, we're putting him back on. Is it going to answer that question?  Okay. How about it? Okay. Yeah. So before 2015, all decisions were made by TSC. The TSA administrator had no role in reviewing the redress process under any circumstances. It was all final decisions by TSC. And that is why this court and EG and other courts said, no, this all belongs to the district court because these are TSC orders. So after 2015, when the procedures were revised, the revision really only did one thing, which is, if you have a U.S. citizen and they are on the no-fly list when they submit a redress proceeding, then in that situation only, TSC makes a recommendation and the TSA administrator can say... TSA or TRIP. The TSA administrator. This is all administered through the DHS TRIP program, but the TSA administrator makes the final decision in that situation. So outside of that situation, where you have a U.S. citizen on the no-fly list filing a redress complaint, that's the only situation where the TSA administrator is making the decision on or off. In every other situation, it's TSC. And so that is why after the TSA makes a determination, say, on day one, in theory, if on day two, the TSC says, new information has come in, something different. Right? It's not like TSA administrator then says, well, no, I'm overruling you. Because... But I think that the key thing is... Sorry to cut you off, but... Oh, okay. I believe the key thing is that the TSA administrator's role is only triggered by the filing of a redress complaint. And a redress complaint is filed by the person who's on the no-fly list. Yes. So once the TSC makes a new decision that says this person's no longer on the no-fly list, the only way the TSA administrator gets involved in reviewing that is if the person files a redress complaint. Yes. And they're not going to file it if they're not on the no-fly list, unless they disbelieve that they're not on the no-fly list. That's right. Yes. You're right about that. And so only if there's a redress complaint filed and TSC says, we recommend that they stay on, that's when the TSA administrator comes in. And if we're outside of that situation, the TSA administrator... I still don't feel satisfied. I'm sorry. Sure. Go ahead. You're smarter than me. So I'm not saying the administrator's going to overrule TSC after they've said someone comes off. What I'm saying is now it's Wednesday. And so a new person started in the office at, I guess, TSC again and goes, hang on. What just happened here? Surely somebody just was missing some pages from the file. We need to get this guy back on. And they sent him the next day a letter saying, whoops, never mind. We're now superseding that prior TSC decision with today's decision. It's the exact same information. Nothing new has come in. Whoops. We think you do still qualify based on the same information. And then he's going to file a redressing and it's going to go up to the administrator. The administrator's going to say, yeah, for all the reasons I said before, yeah, you should be on here. I mean, that's what I'm trying to wonder is what stops someone, whether it's personnel change or someone rereading the file and going, what were they thinking? What was my friend across the hall doing the audit thinking? This looks like the type of stuff that puts someone on the no-fly list for the same reasons we thought in 2022. We don't see anything that's changed. And start the process all over again. That's what I'm trying to ask. And it sounds like there's nothing the staff said. No, that's not something that's contemplated by the agency. It's not contemplated. It doesn't mean it couldn't happen. I mean, they have procedures and policies in place and memorandums of understanding about who does what role in the whole watch list thing enterprise. So this is not something that the agencies haven't thought about. Does the TSA administrator supervise TSP? No. Right. I mean, only in the limited context of a redress application. And so, I mean, one of the things, I mean, in theory. TSP is multi-agency, right? Yeah. And it's housed within the FBI. And so, I mean, in theory, I suppose the TSA administrator could get wind of something. Can TSC change its judgment? Yes. Oh, its own judgment? Yes. Yes. And that's the whole point of the biannual release. But if you change it again. Yeah. And what's to stop it from changing it based on this same file of information? Say there's new personnel come in. Right. And new personnel come. Well, there's two things. This whole removal decision and the declaration saying you no longer meet the criteria and all the explanation that you have in your expatriate record is all going to be in front of someone in front of the TSP. So, if tomorrow somebody said, you know what? Zero has changed in the record since his removal. But let's just put him on again even though there's not anything different at all. Like someone's going to see all this information and go, well, I know why they were removed and I know the circumstances and I know the representation that we made in this declaration. All of that is available. And so, that with a presumption of regularity for the government, I think you would say it's just not a scenario that's going to happen. But there's, you know, what if there's in the change of administrations, there's going to be a new administration regardless of the outcome of the election will be a different administration. Maybe the composition of TSC changes. And so, three months from now, to Judge Millett's point, the newly composed TSC says we're going to look at all of these decisions. What's stopping them from saying we're going to look at all these decisions that our predecessors made? Right. I don't think there's anything necessarily stopping them. But I think our point, and I assume this is all going to the mootness question, our only point is if the relief sought in this case and if it were granted by this court is to set aside the 2022 letter. Nothing in that judgment would preclude that either. And I think that's our point. On this court in FICRE, the arguably mooting event, was that the same thing as here? That the TSC decided that FICRE was no longer on the no-file list? Yeah, that's my understanding. So if it was true that TSC's ability to change its mind would be available enough, then the TSC taking somebody off the no-file list would not be a mooting event. And that would have been an easy opinion to write for the Supreme Court because it would have never had to talk about the fact that the relief sought had to do with the kind of claim that could still come up and as to which a declaratory judgment or injunction would provide relief. Because if it was just that the TSC could wake up tomorrow and change its mind again, then there would have never been an argument that that was a mooting event to begin with. Well, I think that what happened is that the TSC not only – I'm not crazy about the phrase, change its mind, because it's making a new judgment about what it currently knows. But leaving that to the side, it was a representation in the declaration that based on the currently available information, they're not going to be put back on the no-file list. It's the same thing that happened here? That's correct. Is there any difference between the legal force of what TSC did in FICRE and what TSC did in this case? No. I mean, there wasn't a supersede letter, but I don't think that that's a distinction that would have changed the result in FICRE as I read that case. But again, I think our mootness argument here is not based on the absence of a future injury and whether it's likely to recur a voluntary cessation standard. It's about the relief that's sought by the court. So how can it not be based on voluntary cessation at all? Because let's just suppose, hypothetically – I'm not saying that I or anybody is definitely there – but let's just suppose that it's true that because of what TSC has now done, that the relief that is sought in the 46-110 proceeding can't be meaningfully granted anymore because it's effectively seeking the same thing, which is not to be on the no-file list any longer. But if the government is just – if voluntary cessation principles are at stake in that the government's just doing this as a convenience just to stop litigation, and then let's just – I don't mean to assume the worst, but just to play out the hypothetical, right? And then the government is just going to then, tomorrow, once the case ends, put them right back on the no-file list. So there's got to be some way to deal with that, and usually it's because of voluntary cessation principles that are a backstop against that kind of thing happening, right? But is your argument that those principles just don't even apply in this case? No, but I think that it applies in conjunction – sort of in the background of all those cases is the idea that then there's – because it could be repeated, there is relief that the court can grant to prevent that repetition. And that – those two things together are what keep the Article III case or controversy. So what's to stop that from happening then? If you are – if you're – where you're going with that is you have to have relief that can be granted. Here, relief that – relief can't be granted, and therefore voluntary cessation drops out of the picture. Well – Then what – suppose that's actually what's happening. Yeah. What is there to stop that from happening? Well, I would phrase our argument differently. We're not arguing, and we've never argued, that that can't be – that relief can't be issued. What we've argued in our brief is they've waived any claim for that kind of remedy in declaratory injunctive relief. Could they get that kind of – could they ask for that kind of relief in a 46110 action? I mean, I think they could ask for it. I don't know whether it's available or not. I think that there are arguments on both sides of that question. Would we assume – this kind of came up in a colleague with opposing counsel. But in a case where that relief was asked for and it's 46110 and 46110 is jurisdictional, would we assume the plaintiff can get that relief in a 46110 action in deciding to move this question? I think you can, and I think what's important to understand is while it's a jurisdictional provision, not everything in 46110 is jurisdictional. The 60-day rule, for example, this court has held is not jurisdictional. There's venue provisions that are obviously not jurisdictional, whether it's here or in the circuit in which you reside. I don't think that's a jurisdictional question. I think it's a venue question. The relief that this court can grant, I don't think that that's a jurisdictional question. I mean, there could be statutes where the relief and jurisdiction are tied together. For example, I can't remember the immigration statute that the Supreme Court recently ruled on, which said lower courts, of course, other than the Supreme Court, have no jurisdiction to enjoin certain actions. So you could do that, but I don't read that as being the case here, or at least arguably. But I think all that is sort of beside the point. They have waived any claim for that relief. And when I say waive, I mean in the true sense of an intentional knowing waiver, not a forfeiture through neglect. Yeah, I think they're not disputing that they're not asking for declaratory or injunctive relief. Right. And as I read their argument, too, while they argue that permanent injunctive relief is not available, which I think is an open question, they don't make any argument that declaratory relief is not available. What's the government's view on the district court litigation that's ongoing now? Because if that litigation asks for declaratory and injunctive relief of a kind that the government doesn't think is available in a 46110 action, then can that kind of suit go forward? Well, it's our view that if you're challenging the no-fly list in any of its forms, meaning a procedural challenge or a substantive challenge, that really belongs exclusively in the court of appeals. That's what this court held in Busick. Under 46110? Under 46110. And so the whole point of that litigation. And what about the FICA complaint? So the FICA complaint was not a 46110 complaint. Right. Is the government's view that that complaint should never go forward? Well, there's another part of FICA that the Supreme Court didn't, like, address because it wasn't part of the cert petition. But if you go back and you read the Ninth Circuit's decision, we did argue that if you're challenging your current no-fly list status, even as a mootness matter, that that belongs exclusively in the court of appeals. And the Ninth Circuit partially agreed with us. It said to the extent that you are challenging your current status, the TSA administrator's decision, yes, that belongs exclusively in the court of appeals. But we read a portion of the complaint in that case to attack TSC's initial decision. To place you on the no-fly list. Yes. And that, the Ninth Circuit said, belongs in the court of appeals. But, of course, this case... In the district court. In the district court. Yes, I'm sorry. And so the only challenge here and in the... But does the government agree with that? I'm just on the idea that there can be a challenge related to placement on the no-fly list that doesn't have to be brought through a 46110 action and, therefore, can be a district court action. Well, you know, we didn't seek cert on that precise question. But I would say, assuming that the district court would have jurisdiction in the case, I think there would be a lot of merits and other problems. Probably maybe a jurisdictional problem that it's not and no longer is final agency action. And there could be other problems as well. For example, that kind of a claim is probably, so far as due process is concerned, has to be limited to a pre-deparation challenge. Because that's the only thing that you could do when you're challenging the initial decision. But the government's not taking the position, and I know you may not have fully fleshed this out, but the government's not taking the position that that kind of action can never go forward in district court because the only kind of action that can ever be brought in this arena is a 46110 action that has to be brought in the court of appeal. I think that's right. I think if you tried to slice and dice the claim to be one challenge to TSC in district court and a challenge to the TSA final decision in the court of appeals, we probably have a lot of either jurisdictional or merits-based arguments to defeat the portion that stayed in district court. And so, effectively, all you have is the court of appeals action. Yes. How can someone ever get... Sorry? I thought this all started as what is the check on voluntary cessation? And then it sounds like the answer is none. I think the check is if you are bringing a challenge and you need to seek relief, that would then create a binding judgment going forward, which is either injunctive relief or declaratory relief. But you weren't even sure you can get that under 46110. The government's position is, and you can't ever ask for that, as we read 46110, if that's the government's position. That's not our position. Okay. I'm sorry. I thought you had said early on there were arguments against that. I said there are arguments on both sides of that issue. For example... What is the government's position on whether declaratory and or, you can pick one or the other, both injunctive relief can be sought as part of a 46110 petition challenging the TSA's administrator's final decision to maintain someone on a no-fly list? Well, we haven't taken a position in this case because the plaintiff... You've taken another case? Does the government have a position on that? I think in the next case we would come out with our position on that. But I would say this. But what if we're worried that your next position is going to be you can't do that, and so what you're saying now could be a check on voluntary cessation would be no check at all? Right. And that's not at all clear from the statute. I mean, if it was clear in the statutory language, you're going to lose that argument, but it's not at all clear in the statutory language. Right. Let me just say what we... I don't want to make a binding representation for the government in a case where that's not necessary because they've expressly and knowingly waived any right to that, but I will say the following just to sort of generally cover the area. First, 46110C does allow for preliminary injunctive relief. The statute expressly refers to stays of TSA's order. This court has also held that it can issue a judgment saying that agency action is unreasonably delayed or unlawfully withheld under 46110, even though the statute doesn't say that. So we know that there is some relief that is not mentioned in the statute that this court has held can be granted. So, I mean, I think that at least leaves that open for the next case, but I think we would probably want to wait for the next case, and I do actually think there are pending cases coming up for this court where we might have to take a definitive position on that question. But I don't think that you need to answer that question. With respect, I don't think that the government can or should answer that question. I understand that we don't have to because you could say that that's not presented here because of the way the complaints are. I guess the part that still puzzles me is if you're right on your mootness theory and you're also right that there can't be a voluntary cessation argument here because voluntary cessation is predicated on the ability to grant meaningful relief, and that kind of meaningful relief hasn't been asked for here. If the next leg is that kind of meaningful relief can never be asked for in this kind of case, then we're back to you're right, you get everything mooted, and you can do it every single time in response to litigation, and there's no voluntary cessation problem with that because you can't get the relief that would stop voluntary cessation. Right, and that might be an argument on the other side for why you ought to read the statute as permitting that relief. And it may be... Again, I don't want to commit, but I do want to say, like, in other analogous circumstances, like the APA, which has set aside and all the similar things, the government traditionally argues that the normal equitable remedies of injunctive and declaratory relief are available in those cases. Obviously, we argue that they ought to, in the cases, be tailored to the individual litigants rather than more broadly, but that relief is available. So I think it may be the case that the government comes in and takes that position under this statute as well. So, again, I don't want to necessarily commit to that, but I think that this is something that I think could be reserved for the next case, particularly because they waived that request for relief. You mentioned other cases coming. Has the government taken a position in those other cases coming that you're referencing? No. I don't know that they've been briefed yet, and I think it would only come up in a case where someone was removed, because otherwise you would just issue the set-aside relief if you thought that was warranted. It would only come up in that context, I wouldn't think, if someone was, like, seeking forward-looking relief as well as removal from the NOFA. Right, yes. I think in a case like that we might need to take a position on it, or the court could say we don't really need to reach that relief because the set-aside gives them the full relief and we don't need to issue any further relief. I think it's related. The meaning of the part of the letter that says, based on an assessment of currently available information, you've been removed and will not be placed back on the NOFA list based on the current available information. You want to know the meaning of that? I sure do. Okay, I assume that your question is the one you had earlier, what happens if somebody repeats the same conduct. The answer to that is that our declaration leaves that possibility open. So, for example, if somebody, went to a terrorist training camp and they were put on the NOFA list. Oh, no, no. Just on the public record here, if someone were to return to heaven to visit family and to study in a religious center where that person had studied before, and it would be the exact same amount of time, the exact same amount of time with family, doing religious study, there would be no information about people met or anything that happened on the way there or back. It would be just those same facts, and your position is nothing stops them from putting him back on the NOFA list. If the conduct was repeated? And nothing, no new factual information about the risk of those contacts, where to come forward. One could imagine, again, just to get away from this case, that if someone goes to a house party, and they've been to the house party, and we go, PSC goes, look, we've been watching them for however many years, it's fine, that house party is fine. And then, new intelligence, the removal of the new fly list, then new intelligence were to come along about, oh, my gosh, there's a basement in that house, where really bad terrorist stuff is happening, that we didn't know about before. And so, this person were to go back, and were to go to that same house party again. So, the conduct on the surface looks the same, but there you would have new information. That, I would assume, would be obviously different. But you don't have any new information. So, it's just the same house party, same guests, no new information about anybody that would add any more color or concern to those activities than what you had on May, sorry, I'm forgetting my dates, May 4th, 2024. Still, he could be put back on. Well, I just want to be careful about answering your question. If there's literally nothing new, then, no, then today's information... Well, it would be, it can't be literally nothing new, as in this would happen in, you know, December 24, which obviously hadn't happened before. But, you know, the date, might wear a blue shirt rather than a red shirt. I mean, you know, there'll be factual differences, but nothing that one couldn't explain either on public record or classified silence is materially different as an increasing risk. Right. So, if nothing materially changes to increase the risk from that person, it's just the same behavior of what happens. Well, I mean, I do think, number one, I want to just go back to earlier in your question, just to clarify something about what's in the public record. All the things that you said about religious schools, that's not part of the government, that's their... That's right. I'm just saying he said that's where he went. Right. But, and what I do want to emphasize is you do have the ex parte record before you, so you are aware of all the information that the government has. And so I just want to then speak in general terms to your question, which is sometimes... I was making up a hypothetical person.  No, no, I understand that, granted. But just to speak sort of generally, I don't ever like to say I'm resisting or hypothetical, but I'm going to say that in this case only because sometimes the repetition of conduct is the thing that is new. And because you... So somebody who did something and then maybe stopped for seven years and then resumed it, I understand why someone might want to say that's nothing new, but it's the repetition of the conduct that sometimes can put new light on the old, which is why sometimes in the law we treat repeat conduct as different from the original conduct. Right, because if you have a situation where somebody did something and that raises suspicions, and then a few years pass, and then the reason the government takes them off the no-fly list is because by all appearances they've been rehabilitated, let's just say. Right. In theory, that can happen. Right. That was my terrorist training camp example that someone goes to terrorist training camp and in 10 years they're like, oh, I renounced. I'm not doing that anymore. And they live a peaceful, normal life for 10 years, and then all of a sudden they decide I'm going to do it again. You could still say, based on the currently available information, we would not put you on the no-fly list in the future. And that would be absolutely true, that the currently available information includes that you did something that at one point drew suspicion, say, I mean, going to a terrorist training camp, that could be it. Right. But something else has happened that reduces the level of suspicion that emerges from that enough that the person is no longer on the no-fly list. Right. So just to return to a hypothetical you were stating when Petitioner's Council was up, suppose the government said two times is not enough anymore, but three is. Right. And they do the same thing a third time. It's still the same thing, but the fact that they do it a certain number of times makes it a different analysis from an intelligence point of view. And that's not always the case. So when you say, based on the currently available information, oh, I'm sorry, I can't go? Okay. Go ahead. I didn't say anything, I was just waiting. Oh, sorry. Discussion? Sorry. When you say, based on the currently available information, he would not be placed on the no-fly list again, that doesn't mean even if the currently available information were repeated again. It doesn't mean that. It does not mean that. It just means nothing new happens that in the government's view raises suspicions. But something new that happens that could raise the government's suspicions includes something that already happened. It could. Right. And as I read FIGRA, for example, I don't think that the court disputed if that something new was different from what happened in the past that that wouldn't be repetition of the same conduct for purposes of voluntary cessation. So they only focused on what if you repeat the same thing. And while we tried to argue in that case that if you repeated the same conduct, that's fundamentally a different type of record and different action, or at least it could be, and we weren't successful in that, but it would explain why, it does explain why putting someone back on the list in that scenario is consistent with our declaration. But I think in that case, you would have to have, you would have to explain either publicly or in camera that there's been a material change. That was a hypothesis of three. There's something magical about the third visit. That's why I understand the question that somehow when you do three, then you must have a certain status or relationship or something. Right. My problem here is that how do we know that the, I mean, the government could look at this and go, well, he didn't repeat it because he couldn't fly. He couldn't get there. Right, but something would have to happen. I mean, your terrorist hypothetical was someone rehabilitated and repented and said I've changed my mind in these things, but if the only reason something didn't recur is because they were on the no-fly list, and then you take them off, and then presumably they do the same activity again, then I'm not sure anything has materially changed. Well, I mean, I think... I mean, it just seems like the government, at that point it seems like we're yanking it away just to kill off the litigation, and the second they do the exact same thing again, unless there's a material change, and that could be something. I get that doing the same thing however many times could at some point become a material change, but otherwise it looks like a trap. Right, I would say this. Number one, you have the ex parte record before you, so you can see all the government's reasons for putting them on the no-fly list and its explanation for his removal, and I think you could decide for yourself whether it's that kind of a trap. But I would say in addition that there's no case that anyone has ever cited in which we've actually done any of that, and if somebody were put back on the no-fly list under the type of situation that you described, I would imagine that the government's ex parte record would have an explanation for why this made a material difference. Or it would be arbitrary. Right, I mean, as in any agency action, if you don't sufficiently explain your... Now, this is one in which I think the standard review would be particularly deferential, but we'd still have to have an explanation for that. So if that case came up, that would have to now... There's a lot of talk about the government mooting these types of cases out. Like I said, I think you can look at the... See whether there's some sort of trap or trick going on here. And, of course, the only... There was a... On that score, by the way, there was an assertion made in the Self-Model Briefing that the government has never... I may have it wrong, but that there's no publicly available indication of somebody who's been removed from the no-fly list except in the course of litigation. And I may have that assertion wrong. Yeah, I would say two things to that. One is, obviously, the only ones you would know about are the litigated ones, because people who are on the no-fly list and never sue but are then sort of downgraded or removed, you just have no cause to know about it. The other thing I would say is it's just not... There's one case that's just factually not true, which is the very first no-fly list case litigated ever in the Ninth Circuit, Ibrahim v. DHS. That was someone who was on the no-fly list. It was a mistake, and the record shows that the person was then removed from the no-fly list, like, within a day of us noticing the mistake and never put back on. And that all happened about a year before the case was fired. That's an example of the first phenomenon, where it just happens without people knowing about it. Yes, because at that point in time, we were pre-2015. They only learned about it during the course of the litigation. But I would also say that there's a long list. There was an amicus brief filed in FICR that has a long list of reportedly 40 cases. I would just say the vast majority of those are people who, when they got their letter, it just said, during the course of litigation, it said, the government knows of no reason why you can't fly. These are not people who ever notified that they were on the no-fly list, yet those are counted as removal during litigation. The other phenomenon that happens is litigants frequently argue that they don't need to exhaust administrative remedies, so they're in the middle of a redress process, and then they file a case. So if they're removed, it might happen during the case, but that's only because they didn't wait for the process to end. But I guess, I mean, I understand. I'm still stuck with this. I think at the end of the day, unless people can seek declaratory or sort of forward-looking injunctive relief in these 4610 cases, that there will be nothing to stop voluntary cessation, because in every case, when someone is put back on, you'll be able to say, well, it's a new administrative record. It might be an arbitrary one. It might be a valid one. But it could be as arbitrary as one could imagine. But it'll be a new administrative record. And voluntary cessation is long applied to agency cases, so I'm just struggling with what to do, because it does seem dangerous, particularly if it's quite unknowable. Was FICRA before the 2015 changes? The case started before that, I believe, but then it reposted, so they did get all the redrafts, the same as the Petition for Human Rights. Right, but they were a district court challenge. Yeah, and part of that case was to say it belongs to the Court of Appeals. But, I mean, I guess I would say this. When that next case comes and the person does ask for it, I think you can address it there. And if your concern is that this relief has to be available when we read the statute that way, that may be one outcome. If the outcome is the way that Congress has dictated and channeled review is to courts that only do sort of retrospective setting aside, then that's Congress's choice. And that may be your answer. But I think you can face that in the next case. And I think I've indicated that there's at least reasonable arguments for saying that those reliefs are available. They just haven't requested it in this particular case. Again, you know, just to emphasize, we did finally notice that originally we were not going to argue mootness, and we only did when this court entered an order for supplemental briefing in which it noted that they were not seeking that relief. So this sort of came about not because the government was trying to engage in trickery or get rid of the case, quite the contrary. We were only sort of responding both to this court's order for supplemental briefing and the waiver that was in the petitioner's opening supplemental brief. So as I say, this is not a case where we're trying to sort of trap people. This is a product of the petitioner's, the master of his own complaint or petition for review, as it were, and they can ask for whatever they want. And if they thought that it, for the reasons you said, it really ought to be available, they could have asked for it. What's your response to the other side's point that maybe the reason we're not asking for some of these kinds of relief that would survive a mootness challenge is that we don't have any idea why he was on the no-fly list to begin with and why he was maintained on the list because of the limited amount of information to which we have access? Yeah, I mean, to me, it's a little bit of a non sequitur. Like, you can ask for the relief that you want. You don't have to know. You got to get past Rule 11. I mean, you can't just ask for relief based on hypotheses about why I might be on the no-fly list, about which you don't have any evidence. Right, I mean, I don't think that you need to have evidence about why you're on the no-fly list to say I just wanted an injunction so that not only that I'm taken off, but that they can't put me back on again the next day for exactly the same reason, all these sort of dangers that we were talking about before. You just say, well, whatever the reasons are, I just think that they're insufficient and you shouldn't be able to do it again or want a declaration. So I don't think that precludes them from asking for that relief. And in fact, part of the reason why you ask for a declaratory judgment under 2201 is because 2202 says in the next section you can then use that declaratory judgment to get any other appropriate relief for future actions. So that's why I think people ask for that kind of relief not because they want to be happy with a declaratory judgment, but because of the use and purpose that it serves or in the alternative, the use and purpose of an injunction, which is binding in the future. But they haven't sought any of that. So we are, we're here where we are. Can I ask a question about what, based on the assessment of currently available information, means, does that mean that we could learn new information about past acts that could change our suspicion? And if we gain that new information about past acts, then we could put you back on the no-fly list. I think that's certainly a possibility that's left open by the Declaration. One example is, let's say you engage in some activity that we had no reason to understand to be suspicious at that time. But then today we learn that that's actually a suspicious group that you attended or whatever. So it sheds new light on the old information. And I think that's the nature of investigations, which is you learn new facts all the time. And sometimes they're sort of self-contained. They're suspicious in and of themselves. And sometimes you learn new facts that put a different light on old facts. So to answer your question, yes, I think that would be left open by the Declaration. And you don't think that that is materially different or significant for the mootness analysis because that's basically the same as if the record is different, that would be based on a new record, the same as if the person did something new and then those new actions caused there to be some suspicion in the agency that put them back on the list. There's really no difference between those two things in your mind. Yes, although I would put it slightly differently, if you don't mind. I would say whatever the reason is why someone sort of might get put back on the list in the future, whether it's new information or old information being repeated or new information that makes you think of old information differently. At the end of the day, the only relief being sought in this case now is to set aside the prior order, which I think no longer can be done and no longer affords any relief. And so it's ultimately about the regressibility rather than whether the challenge conduct would recur. But I do think in the hypothetical that you posed, it would be in the category, I think, that the Supreme Court didn't challenge, which was if the person was put back on the no-fly list for completely new reasons that were not the same as the old reasons, that that would not be the challenge conduct recurring. That would be a different challenge conduct based on a different record. It didn't say that explicitly, but it certainly didn't focus on that. And if that were enough to keep the case live, it would not have needed to sort of engage in the analysis about repeating prior conduct that the court did. So I do want to, if I could, address Judge Millett's question to Petitioner from earlier about flying from other countries. Okay, thank you, yeah. Or, yeah, boats or buses or whatever. Sure, I would say it is certainly possible. It's not necessarily definitely going to happen in every case. It sort of depends on circumstances. We freely acknowledge that we share intelligence information with other countries. They may or may not apply that to their own no-fly list. But I would say that in the only no-fly list case this court has gone to judgment with, which is Busick. Although you won't see it in the opinion, if you read the briefs in that case, the petitioner made a point about how she lived abroad in Europe and had family in California, and the difficulty was her traveling back home. And she arranged a flight into Mexico, to, I think, Tijuana. A charter flight or something got her back, right? Sorry? Was it a charter flight that got her back? No, I think this would be, sometimes people come back on a special flight if there's a, if someone's abroad, put on the no-fly list while they're abroad, they get a one-time waiver, they come back under special, but we're not talking about that situation. This is routine flying. You fly into Mexico on a non-U.S. carrier and then drive across the border. The no-fly list doesn't prevent you from going across the border or coming back. Someone who's on the no-fly list might get secondary screening, just the same as anyone else crossing the border, might get randomly, but that's, you're not prevented from crossing the border. And here, you could also sort of, theoretically, you have the possibility of someone who lives in Indiana, as I think the petitioner does, driving up to, like, Toronto, maybe a day's or two-day's drive. Maybe if you do a bus or train, it's faster. And then sort of flying on a non-U.S. carrier. Of course, we'll never know that at this point because the record doesn't reflect that you ever try to test that possibility. But I only mean that to go to sort of the petitioner's private interest in the due process balancing and not that, not trying to suggest that that's the best way to fly or that it's not a burden, but just that it is one that is just about a fairly minimal one, one that this court in DUSIC said was clearly subordinate to the government's And that is the point where, I don't know if anyone's interested in talking about the merits. I'm happy to do that if you have questions on the merits. I think so. Okay. Thank you. And if there were no further questions, thank you. Thank you, counsel. Mr. Stegall, we'll give you three minutes for rebuttal. Thank you, Your Honor. See where it goes. As I think that argument just clarified that the key question here for movements is the remedial one, that that's really the full thrust of the government's argument here. And I also took counsel's argument to suggest that they acknowledge that a declaratory judgment would still be permissible here. And if it were, then again, this case would be on all four of us with secret. But I think that the key to point out is that a judgment from this court setting aside a TSA administrator's order would have the exact same functional effect. And again, the government's only response on that point is to point to the DHS trip letter and say it supersedes the TSA administrator's decision. I just think that the key there is the government's burden to prove that this injury, in fact, isn't redressable. The government hasn't established that that DHS trip letter, again, there's this entire back and forth about sort of the agency flow chart, et cetera, but DHS trip may be part of the TSA, but it's not the TSA administrator. There's no authority for the proposition that DHS trip can unilaterally rescind the TSA administrator's decision and so void it that this court no longer has any authority to address it and set it aside. I do think the key here is that to the extent that we were seeking to enjoin TSC, so TSC is, again, the entity that actually maintains the no-file list and it determines who's on it and who's off it. If Mr. Maharm was attempting to enjoin TSC to take him off the no-file list, that would be, we're not disputing that. That was also conceded in pre-trial. What we're trying to do is set aside the TSA administrator's decision that he was properly placed on the no-file list given the evidence available to the government and that Mr. Maharm does not have any sort of constitutional entitlement to review that evidence. So that decision is still in place, at least. If you weren't challenging the placement decision, you were challenging the final decision of the administrator to maintain him on the list. That's exactly right, Your Honor. I think that's the key distinction. The TSA administrator's final decision, it hasn't been rescinded. We put it out in our brief, the government didn't respond, but if they wanted to rescind that decision, they should have asked this court for a voluntary remand in order to do so. They didn't do so. And so that decision is still there. It's been superseded in part in that it said that he could properly be maintained on the no-file list, and he's no longer on the no-file list. For the solicitor general's brief in FCRA, the reply brief said that a TSC removal from a list is binding and neither TSC nor TSA can change their mind based on the same information at the time of removal from the list. So it's not the prospect that they can just sort of change my hypothetical of changing their mind. No, Your Honor. And so it's binding on TSA as well as TSC is what they said. That's right, Your Honor. And we don't contest that. We're not claiming that he's going to be put back on the no-file list because of something the government already did. The TSA decision is truly displaced. It's not... He is off the no-file list. He won't be placed back on based on currently available information. But the reason Dicker wasn't moved was because he could do the same thing again and be placed back on the no-file list. And that's why the TSA administrator's decision, which, again, remains in effect, can be set aside. Why that still has problems for Mr. Mohorovic going forward... Your comment is that's not the reason the Supreme Court gave as to why his case wasn't moved. Your Honor, I think that that is... So the key quote, I think, from FCRA that applies equally here that the Court of Appeals observed none of that speech that they're talking about the government declaration, none of that speaks to whether the government might release him if he does the same or similar things in the future. So, again, that exact same problem is here. Mr. Mohorovic doesn't know what he did. So it's on page 242. Shoot, I have this other thing in. It says, the paragraph starts with viewed in that light. This case is not moved. And then it's the... Right. That's the whole thing.  Go ahead. That's because the claim that was being made was the conduct that puts you on is something that can never be taken into account. And therefore, you have to be enjoined from being able to take that into account at all. Well, no, I don't... So what I take that sentence to say specifically is that the fact that... And, again, I understand the government didn't see this point. But the declaration that was submitted in FCRA and submitted here does not ensure that he won't be placed on the no-file list again if he does the same thing. And so that's sort of the starting premise. And Mr. Hogg's claim... Only if he does the same thing without any material change in the significance of it. Not even, Your Honor. The Supreme Court doesn't say that if there's no material change or anything like that. It just says none of that speaks to whether the government might release him if he does the same or similar things in the future. That's contrary to the issues. So I agree with where it's said. This is binding. It goes in the file. It's down under the file that this is not enough information and any new... There has to be something different. And something different can't be something ridiculous. Well, no, Your Honor. Something different in that sense could be the same thing done again in the future. So that something done in 2025, which is the same as something done in 2017, qualifies as new information that wouldn't prevent... It has to explain why it changed the risk. Perhaps under arbitrary conditions would be... The Supreme Court's point here, and this is equally true in this case... The declaration is part of the nomination control file and will be reviewed if the respondent wherever nominated to be placed back on the no-fly list. Yes, Your Honor, but the government did not prevail on FICRA. It binds a promisor entity. That's how they described it. Yes, Your Honor. So that argument didn't carry the day in FICRA, and that's because, again... That's for these reasons. It's not because the Supreme Court said we don't believe you. There's no reason to doubt that, right? There's no reason to doubt that. No, no. And again, we don't think that he's going to be placed on the no-fly list again for the same reasons. We're not contesting that aspect of the government's declaration. The point is the government's declaration is specifically limited so that it can fill in. And again, I believe the government conceded it. The government could place him on the no-fly list again if he does the same thing again. So again, that goes back to the religious school and the model. Only if they could explain why something materially changed, and if it did, that is a whole different case. But it could just be the passage of time, Your Honor, and again, that wouldn't distinguish FICRA because, again, so the... I don't think if they said it's now May 5th and not May 4th, and we have nothing more to offer to you, that's the passage of time, but we're going to now put him back on the list. I don't think that... I think the government could have said the same thing in FICRA and that, again, didn't carry the day in showing that the government... For a different reason. No, Your Honor. Again, so the government here isn't contesting that it could meet the voluntary cessation requirements. It's solely focusing on the remedial question. It's solely focusing on whether this court has the authority to set aside the TSA administrator's decision. Can I just ask this question? As I understand the government's position on what it means by superseded, what it means is that as of the TSA administrator's decision, that ratified Mr. Muharrem's existence on the no-fly list. So that means that he was on the no-fly list until he couldn't fly because he's on the no-fly list. That part of it has been superseded because TSC has decided he's not on the no-fly list. There's nothing the TSA administrator can do to undo that. So insofar as the TSA administrator's decision kept him on the no-fly list, that part of it has been superseded because he is no longer on the no-fly list. You're not disputing that? No, we're not, Your Honor. Exactly. And that's why I think it's key to keep sort of all these different parts moving. So again, we're not seeking an injunction against the TSC to remove him from the no-fly list. What we're trying to do is set aside the TSA administrator's decision. The DHS trip letter, the DHS trip in this circumstance is essentially middleman. Right. It conveys what TSC did and to the extent that that displaces what was in the TSA administrator's decision, that's superseded. Right. I think where we are is there's a common understanding on both sides of what superseding means and that they're right that it's superseded insofar as it means that. So the dispute is whether that is legally enough to move the case. I think the dispute is what exactly did it supersede. Did it supersede the entire TSA administrator's decision such that this court couldn't set it aside for that proposition?  And I don't think they're disputing that. I don't think they're claiming that it superseded everything in the TSA administrator's decision. I think what they're saying is it superseded the TSA administrator's decision insofar as that decision kept him on the no-fly list. He's no longer on the no-fly list. And if that's their argument then I don't see how this court would lack remedial authority to set aside the remainder of the TSA administrator's decision. Right. So then it becomes a question of whether that's legally enough to move. And I don't see how it could be and I don't see any authority they've set for that proposition. And then even setting aside that we haven't gotten into the capable of repetition invading review exception but I think a number of this court's questions were sort of what would the ultimate check on the government be and I believe that's the ultimate check. So even when there's sort of no actual relief the court can provide that would be meaningful in a case that capable of repetition invading review exception can still apply. I mean we already know it can't be the case that if the TSA administrator mentions seven things in the TSA administrator's decision then there's a legal entitlement to have all seven things addressed by a court on judicial review. We already know that that can't possibly be right right because as long as the TSA administrator's decision is undone there's no entitlement to have everything that... That's true in some circumstances Your Honor but I think the key here is sort of the difference between the TSA administrator's decision and the TSA decision to remove Mr. Harmon from the no-fly list is that the TSA administrator said this evidence was enough. Right. And you could be placed again this is sufficient to support your placement and the TSA didn't disavow that nothing has suggested if Mr. Harmon doesn't do the same thing again he won't again be placed on the no-fly list and so I think that is sort of the live aspect of that decision and then of course coupled with the procedural due process. Right. You want to be able to argue you want to be able to get judicial review of whether at the time the TSA administrator issued his decision I think it was he issued his decision the evidence was enough there even if it's undisputed that the evidence is not enough now to keep him keep Mr. Harmon on the no-fly list. Because the same evidence could again be the basis or the same type of evidence could again be the basis for his placement on the no-fly list just as it was in secret. The same type is not the same evidence it's supposed to be administrative law. Not but again what we mean is as in secret you know if he went to the same mosque or if he you know he did the same thing again again the government's representation is it won't place him on the no-fly list again based on the currently available information. It doesn't disavow if he does the same thing that got him on the no-fly list before it won't put him on the no-fly list again. Yeah and that depends on whether we understand the Supreme Court's decision to be predicated on the fact that the nature of the claim there was that you could never do this you can never take this conduct into account period. It doesn't matter if it's once it's twice three times or eight times. And Your Honor and I don't take the Supreme Court's decision to be phrased that broadly. I know you don't it's just that that's But even if it were again it might well be that our claim if we were able to see any of this evidence would be of the same exact sort. Right. Then it turns on whether the fact that you haven't and you haven't seen all the evidence the fact that you haven't means that you can act as if that kind of claim is in the case even though you haven't made it for understandable reasons because you don't know. Yes Your Honor and I don't I don't know any authority that addresses that specific question but I would also say that this court has inherent authority to resolve the pending motions in front of it if it's really I think a matter of this court's discretion whether to resolve those issues now before either addressing the petition for review or deciding whether or not it has jurisdiction to do so. Just a practical question. Imagine hypothetically you were allowed to see some or all of the information and based on that you wanted to make some constitutional claims like Mr. Fickra did. Would you amend this petition or would you have to file a new petition? No Your Honor I think our petition encompassed the arbitrary or capricious or contrary to law claim. I think whatever There's only in your petition that's I mean you said yeah you said you said that and then you said the request for the relief is to get rid of the   final decision which was the June Yes Do I have the right date yet? June 22 decision. Well and again There's nothing here that says we want different relief other than getting rid of the June 22 decision. No no no again this is encompassing setting aside that decision because we're trying to set aside the CSA Administrator's determination that the evidence on which it relied was in fact sufficient to support his place on the no-fly list. And so you know I'm asking would you have to amend I don't know if you've ever seen someone amend a petition when it's pending before this court let alone after we'd issued a decision. I'm not As opposed to filing a new petition challenging sort of the new record. I don't believe we need to I'm also not sure that there's any provision for us to amend the petition but I don't believe we need to You could ask for some additional type of relief. No Your Honor because the relief we requested is the same. We're still seeking to set aside the TSA Administrator's decision and the substantive claim again we didn't specify in sort of a you know if this were a complaint in the district court we likely would need to amend to add the additional allegation. What we've done in our petition for review is say this violated procedural due process and that's the claim we know that in fact that the TSA Administrator's unaligned proceedings were unconstitutional in that way. And then our second claim is that the TSA Administrator's decision was arbitrary capricious and contrary to law. And so any argument we'd make upon seeing the evidence would be folded into that. For example it's in fact based on his attendance at the school in Damage that's contrary to law. Thank you counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Wilkins